**HARTFORD FIRE INSURANCE COMPANY, Plaintiff,**

v.

**NATIONAL RURAL ELECTRIC COMPANY COOPERATIVE ASSOCIATION, Defendant.**

**Civ. A. No. 89–1901 JGP.**

United States District Court, District of Columbia.

March 30, 1990.

V. Timothy Bambrick, Baltimore, Md., for plaintiff.

Alfred F. Belcuore, Washington, D.C., for defendant.

MEMORANDUM

JOHN GARRETT PENN, District Judge.

The plaintiff filed this action on July 3, 1989 to recover for payments it was required to make as the result of insurance policies issued to Pasargad Carpets of Isfahan, Inc. (Pasargad), Policy No. 42 UUCPC 555 and Schmeltzer, Aptaker & Sheppard, P.C. (Schmeltzer), Policy No. 42 UUCZJ 2521. The case came before the Court for a non-jury trial on March 27–29, 1990. This Memorandum constitutes the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52.

I

1. The Hartford Fire Insurance Company (plaintiff) is an insurance company with its principal place of business in the State of Connecticut.

2. National Rural Electric Cooperative Association (defendant) is a cooperative association organized in the District of Columbia.

3. Pasargad was a tenant in possession and control of property located at 1800 Massachusetts Avenue, N.W. (the "office building") in the District of Columbia.

4. Schmeltzer was a law firm and tenant in possession and control of property located within the office building.

5. At all times relevant to this action, the defendant was the owner of the office building and the landlord of Pasargad and Schmeltzer.

6. The plaintiff issued a fire insurance policy, Policy No. 42 UUCPC 555, to Pasargad and that policy of insurance was in effect on December 20, 1987.

7. The plaintiff issued a fire insurance policy, Policy No. 42 UUCZJ 2521, to Schmeltzer and that policy of insurance was in effect on December 20, 1987.

8. On or about December 20, 1987, a fire occurred on the third floor within the portion of the office building occupied and used by and solely under the control of the defendant.

9. The fire caused extensive damage to the portion of the office building occupied by the defendant and also caused extensive damage to the portions of the office building occupied by Pasargad and Schmeltzer.

10. Pasargad made a claim against the plaintiff pursuant to the above insurance policy, *see* Finding No. 6, and the plaintiff subsequently paid Pasargad $312,915.98 for the damages Pasargad incurred.

11. Schmeltzer made a claim against the plaintiff pursuant to the above insurance policy, *see* Finding No. 7, and the plaintiff subsequently paid Schmeltzer $22,943.88 for the damages Schmeltzer incurred.

12. In consideration of the payments made to Pasargad and Schmeltzer and according to the terms of the respective policies of insurance, Pasargad and Schmeltzer executed releases and assigned to plaintiff any claim the insureds may have against any person or entity. Plaintiff is subrogated in the place of and to the claims and demands of Pasargad and Schmeltzer to the extent of payments made to those insureds.

13. The total amount plaintiff paid to Pasargad and Schmeltzer, *see* Finding Nos. 10 and 11, was $335,859.86. Plaintiff was able to recoup $44,369.77 in salvage, so that the plaintiff now claims $291,490.09 as compensatory damages.

14. The parties stipulate that the amount involved is $291,490.09, however, the defendant denies any liability.

15. The fire originated in the work area used by Aurea Comsti and Katrina Little, employees of the defendant.

16. The origin of the fire was at the divider[1] located between the desks used by Aurea Comsti and Katrina Little.

17. There was a calculator on the return which formed a part of the work area used by Aurea Comsti. The cord from that calculator was plugged into a receptacle located under the desk used by Katrina Little.

18. The divider was approximately two feet by four feet and was on legs. The area between the body of the divider and the floor was approximately three inches; the body of the divider was approximately three inches from the floor. The body of the divider was made of a soft flexible material, cloth covered, and the divider was framed by a chrome like metal.

19. The calculator cord passed from the calculator down between the return located in the work area used by Aurea Comsti to the bottom of the divider, then under the divider to the receptacle located under the desk used by Katrina Little.

20. The origin of the fire is at or near the calculator cord near the floor, but the cause of the fire is unknown. The plaintiff has failed to prove by a preponderance of the evidence that the cord caused the fire on December 20, 1987. While the plaintiff did demonstrate that the cord could have caused the fire, the plaintiff has not established that the cord did cause the fire.

## II

In Part I, *supra,* the Court made specific findings of fact. In this Part the Court explains the findings made in Part I, *supra,* and makes additional findings. This

---

1. The divider was sometimes referred to as the partition during the trial.

part also includes the Court's conclusions of law.

The issue presented in this case is whether the defendant or its agents and employees negligently caused the fire which caused the damage to Pasargad and Schmeltzer. First, it is clear and the Court has found that the origin of the fire was within the work area used by Ms. Aurea Comsti and Ms. Katrina Little. The plaintiff contends that the calculator cord (cord) in question was crushed or crimped either between two dividers located between the work areas used by Comsti and Little, or when it passed through a hole apparently cut or drilled through the divider or dividers. The plaintiff offered the testimony of Thomas Gardner, a now retired fire inspector with the District of Columbia Fire Department, and William Seals, a Special Agent with Alcohol, Tobacco and Firearms. Both witnesses investigated the fire and both qualified as experts. But it was difficult for them to reconstruct the fire and to explain how the cord caused the fire.

Gardner and Seals stated their opinions that the wire was crushed or crimped between two dividers, or when it passed through a hole cut or drilled through the dividers or between the divider and the desk. The Court heard the testimony of Ms. Comsti and Ms. Little and they testified that there was only one divider located between the two work areas. They also testified that there was no hole cut or drilled into the divider. Ms. Julia Hockett, the supervisor of Ms. Comsti and Ms. Little at the time of the fire, testified that there was no hole in the divider. The Court accepts the testimony of Ms. Comsti, Ms. Little and Ms. Hockett and finds that there was *one* divider and that there was no hole cut through the divider.

Ms. Comsti testified in response to questions by the Court that the calculator was relatively easy to move which would suggest that it was not tightly pinched, crushed or crimped by the desk or the divider. Moreover, Ms. Hockett testified that the cord passed down between the desk and the divider and then under the divider. Mr. Little agreed with Ms. Consti

and Ms. Hockett. Ms. Hockett was familiar with the divider and the location of the cord because, as she testified, it was often necessary for her to go under the desk used by Ms. Comsti in order to check whether the "black box", apparently a modem for the word processor, had been accidentally turned off. This gave her the opportunity to view the divider and the placement of the cord.

The plaintiff argues that the cord could have been pinched or crushed if the desk was pushed tight against the divider. The difficulty with this argument is that, even assuming that the desk was pushed tight against the divider, the divider was covered with a soft, padded, fabric and it would not result in the harsh crushing or pinching that is apparently necessary to cause a fire. Weighing all of the above evidence, the Court finds that the cord was not crushed, or pinched, or crimped.

The Court gives great weight to the testimony of the expert called by the defendant. Edward M. Schaefer is an electrical engineer specializing in fire analysis and the investigation of fires and explosions including cause and origin.

It was his opinion that the fire was not caused by overheating, that the pressure, if any between the desk and the divider, was not sufficient to cause a fire, that while there was some evidence of arcing along the cord, it was not sufficient or at the location to justify a finding that it was the cause of the fire. His opinions are supported by the testimony of the defendant's witnesses. Moreover, while he responded to a question asked by counsel for the plaintiff that, if there was a missing portion of the cord, such missing portion may have been the cause of the fire, he noted that the standard length of cord for the calculator destroyed by the fire was six feet or 72 inches and the remains of the cord measured approximately 6 feet. The plaintiff failed to offer evidence that the cord was any longer.

Likewise, the Court accepts his testimony that the evidence of damage to the cord is inconsistent with an internal cause, but is consistent with damage or arcing or

sleeving caused externally. Finally, the Court notes that the defendant's expert ascertained that the circuit breakers had not opened. If the plaintiff is correct about the origin of the fire, it would appear that the circuit breaker would have switched off.

It is noted that the plaintiff proffered that the fire was electrical in origin, but for reasons that are unclear to the Court, the plaintiff did not call an electrical engineer. Thus the testimony of the defendant's expert stands alone and is unrebutted. While the Court does not disregard the testimony of the experts called by the plaintiff, those experts are not electrical engineers and were unable to respond to certain questions concerning electrical problems. The plaintiff has failed to demonstrate that any action of the defendant or its agents and employees was negligent. It is noted that there is no suggestion in the record that the cord was defective or frayed or anything which would have put the defendant's employees on notice that the cord should not pass between the desk and the divider.

In sum, the Court finds that the cord was not crimped or crushed prior to the fire and since the plaintiff's theory is that the crimping or crushing of the wire caused it to overheat, or short-circuit, or to arc, it follows that plaintiff has not carried its burden. Plaintiff's burden is to prove its case by a preponderance of the evidence; that is, that something is more likely so then not so. The plaintiff has failed to meet its burden. The Court finds that the evidence on the defendant's side is more convincing. Even if the evidence was evenly balanced, the Court must find against the party having the burden.

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332.

Judgment will be entered against the plaintiff and for the defendant. The case will be dismissed with prejudice.

An appropriate order has been entered.